Good morning, Your Honor. It's a pleasure. May it please the Court, my name is Karin Barr, and I represent Mr. Ramdani and Ms. Nur Laila in this matter, their husband and wife. And Mr. Ramdani was a student activist in Indonesia in 1998 during the riots. He was involved in several incidents that it's all in the record. And we believe that the main issue in this case is that there is substantial evidence that compels a finding that he was persecuted in the past and has a well-founded fear of persecution. What's your best argument for past persecution? Well, he was arrested. How was he persecuted? He was there in a student in the Semangi 1. He was actually in three different incidents, Chiksaki University in May of 1998. Then in September, I mean in November 13th, I believe, of 1998, the students were going to the Semangi 1 is what it's named, and there's documents in the record. It was in the news and everything. He was at that demonstration with about 100 of his other college students. He's wearing a jacket from his university, and they're there trying to approach the government parliament building where the meeting was held. These students wanted to reach some demands, change, and tell these people, the representatives, that they wanted more demands than what they were getting. At first, when he went out, he was near the front. His friend, and it's in the record also, named in news articles, was shot, and Mr. Ramdani and another person helped pull him away, pull him in to get medical help. But that man, Teddy Kusuma, Teddy Mandani Kusuma, died. And although Mr. Ramdani didn't know it at that time, he went back out, and they were continuing to move towards this building. Maybe I need to be a little bit more direct. Was he beaten? He was. He was hit in the face. When he went back, when he went back, they ran around, and he tripped and fell, and two military men. There's no question that the military and security officers knew about this. It was an ambush to get these students, and he came. He tripped. They got him. They took him off, and they arrested him. His testimony, the judge found in the beginning, although that wasn't for analysis. The question is, I think, whether that's given the conduct of persecution under the asylum law. I.J. asked a question, you know, something like, well, what did you expect? I mean, it's sort of the same thing, you know, what happened here on the street at the WTO demonstration, right? And if you engage in that kind of conduct, you're going to get beaten. It's not particularly persecution on account of a protected ground, is it? Well, his ‑‑ What's a protected ground? His political opinion. Well, what's the opinion? His opinion is that the government, although Suharto was in power, Suharto was ‑‑ Well, except the I.J. sort of, you know, impliedly found that it was, you know, because of their, you know, invasion of buildings and things like that, that these beatings and so forth took place, not because of political belief, right? Pardon? Not because of ‑‑ Not because of their belief, but because of their conduct. Well, I think that they, when they hit him in the face, they questioned him, they grabbed his collar, they interrogated him about who he was, they took his wallet, they found his ‑‑ they have his student ID card, his driver's license, a picture of him and his wife, he testified. They threatened him, said, you will die. And the judge has that in her opinion. And then when she goes on into her analysis, there is no analysis. She doesn't ‑‑ she ignores the fact that he was punched or not punched. There's no evidence of punch but hit in the face. And he said it happened several times. In her ‑‑ she has ‑‑ the beginning when she ‑‑ this is Judge Anaho, she types out as she listens to the evidence. And that tracks with his testimony all of those facts, that he was hit, that he was grabbed and that he was threatened, that his parents got people coming to the house and phone calls afterwards. Then when she gets to her analysis of the law in fact, she completely leaves out the fact that he was hit, physically harmed or grabbed by the collar and all of those things. And when she comes to the very last part, there's no analysis whatsoever. She's concentrating on finding that he's frivolous, not credible, and says that he didn't give any testimony that was the same as his declaration when, in fact, it is the same. Well, I'd like to talk about his fear of future persecution and why the evidence would compel a contrary result. And one of the things that your client argues is that he reasonably fears future persecution because of current country conditions in Indonesia of attacks on public buildings and malls. But I don't see how that can satisfy our circuit's legal definition of persecution in the sense that he, you know, he can't claim that there's simply a generalized or random possibility of persecution. He has to show that there's a particular risk that his situation is different from, you know, other general dangers. So tell me what in the evidence compels, not just, you know, I mean, obviously, you know, there can be evidence one way and evidence another way. But, you know, I want to know that, you know, the evidence, your best argument of what compels a different result. I understand. Thank you. I believe that because they got his wallet, they knew, they recognized him because he had his student jacket on. They got his wallet. Somebody still has his wallet with his student ID, his name. People went to his home. These are not just mystery men. They were people who had to have known. They have his ID, his driver's license, his bank card. They know about him. So students have disappeared. There's evidence in the record that students have disappeared who were protesting against the government. And if he were to go back, and he's an industrial engineer. He graduated. He graduated in May of 98. Somebody he's going to have to put down on the list, have you ever been arrested? He'll have to say, yes, he was, or they will have evidence that he was. And he's been known to be against the government. And so I think he's a harm there. He just doesn't have to. That's a harm. That's a harm. I mean, that's not going to help to get a job, probably, or anything like that. But I want persecution here. Well, he testified that he would, these people have been kidnapped and disappeared. And his parents, there's evidence in the record that they came looking for him. And he moved around. He was never there, except just randomly, and just before he left, he spent one night, he said, at his parents' home. And I think the evidence is there, that they have, they know who he is. It's an individualized claim rather than just general. The generalized ones, and I agree with what Your Honor says about mere generalized lawlessness. It's that, the Rothschildian argument. But this is not a case where, during the riots of 1998 in Indonesia, people were, we were driving in our car and managed to get into a crowd of riots and people threw rocks at us. Those people, nobody knew who they were. This man, he was harmed because he's there trying to change the government with not everybody in Indonesia, but these students. Thank you. Would you like to take the balance of your time for rebuttal? Yes. Okay. Good morning. May it please the Court. My name is Edward Durant. I represent the United States. Substantial evidence supports the Board's finding that Petitioner did not demonstrate past persecution in Indonesia or that he has a legitimate, well-founded fear of future persecution. Now, as the Court knows, persecution does not have a set definition, but it does mean that it's an extreme concept. Not everything that's tragic, like these riots, or distasteful amounts to persecution. Now, the record shows that in 1998, Petitioner was an anonymous student protester among approximately 100,000 people involved in two riots. He was ably represented at all phases of the administrative proceedings, and both the immigration judge and the Board found that he did not establish persecution or a well-founded fear of future persecution. Now, in the first riot in 1998, Petitioner's own words said that he and his fellow students, and the record shows there were about 100,000 people there, clashed with troops, and this was at a government building. The second riot was even worse. Petitioner's own words. They tried to force their way into the building, and this is with a special session of what amounts to Congress going on inside. Now, I do not know if the government troops responded appropriately or like U.S. forces would do, but they do have an obligation to defend government property. There was evidence in the record that some of these rioters had Molotov cocktails, and that was a very contentious situation. In fact, the State Department report refers to this period as a period of civil unrest, and that does not equate to persecution. It is tragic indeed that Mr. Ramdani's friend was killed and potentially killed right next to him again. Even if Mr. Ramdani had been hit, and thank God he wasn't, that would not equate to persecution because he's not being targeted on account of anything. He may have gone there, and the students may have had certain political opinions, but the record shows that this was over 100,000 people. There were vigilante groups. It was an all-out melee. During the second riot, when he was stopped by two people, these people were unidentified. They were not in uniform. Who knows who they were? He says he was interrogated during the immigration hearing. He really couldn't say what they interrogated him about. What it shows, though, is that the incident only lasted for two minutes, and excuse my vernacular, but it looks like they slapped him around a bit and took his wallet. They could have just been some vigilante thugs out for an easy target. Is that what appellant's counsel was referring to, that they know who he is? Yes, ma'am, I believe that's what she's referring to. They did take his wallet. They could have been robbers, but no one knows who these gentlemen were. It was a two-minute incident. The record shows that petitioner's friend saw what was going on, so it looked like an open area, and these two gentlemen stopped and went about their way. In terms of a well-founded fear of future persecution, it is true that petitioner has stated that anonymous people have called his home on a handful of occasions, but none have identified themselves. We don't know who they are. While he was in Indonesia for the two years after this riot, he held steady jobs. He did live at the same residence he'd always lived at. That's what his asylum application says. He might have moved around a bit, but he was at least there intermittently. He also had a steady job up until the time he departed. He had no trouble getting a passport. He was able to court his wife and get married there, and they came over together. So there was no compulsion there. He wasn't fleeing. In terms of the conditions in Indonesia right now, those really aren't in the record, but it is well known that after 2001, we have a resurgence of Islamism throughout Asia and the Mideast. But Mr. Ramdhani is, in fact, Muslim, and he's an ethnic Indonesian. So in some of the cases of the ---- There's nothing in the record, though, about changed country conditions because the government never argued that. There is no ---- there really is no changed country conditions. It's not a good place to live. That's what the record shows. And we didn't have to argue changed country conditions because persecution was not shown. We don't really like to go outside the records. No, no. We have to stay inside the records. Yes, ma'am. So he has not been threatened in any manner. His parents wrote a letter and said some people have called asking for him, but we don't know who these people are. Again, he has not demonstrated persecution. He has certainly not demonstrated a well-founded fear of future persecution. If the Court does not have any further questions, this concludes the government's presentation. Well, you know, I have this problem. This is sort of like a ---- I'll call it like a semi-streamlined case in the sense that there's no reasoning at all in the BIA decision. But on the other hand, the difference from the IJ, you know, the IJ decision is based, I think, largely on credibility. And the BIA rejects it, but then says, but still, he's not eligible. But they don't really say why. So it's hard to get a hold of the BIA's reasoning in terms of, well, you know, what's supported and what's not supported. In other words, are they going on the basis of, you know, lack of past persecution, you know, no likelihood of future persecution? They don't say a thing about it. It's just a terrible decision, isn't it? Well, Your Honor, I've seen better ones, but I wouldn't call it a terrible decision. What I believe the immigration judge did was he found the claim frivolous. She. She did. She. I'm sorry, Your Honor. She's well-known in this circuit, believe me. She found the claim frivolous and found that the alien was not credible, and even then found that he had not demonstrated past persecution or a well-founded fear of future persecution. Well, let me ask you, in terms of analyzing it, because the BIA didn't uphold the credibility. That's correct, Your Honor. The adverse credibility finding. So then do we have to look and give everything that Mr. Rondani said as being true and analyze it from that standpoint? What is factual, you can hold as true. For example, he went to a demonstration. There were a lot of people there. His unsupported inferences, and there are many of them here, you do not have to take as true. He does not know why these two men went after him. He does not know who they are. He does not know who was contacted at his home. He thinks they may be certain people, but that's not factual. In terms of the Board's decision to answer Judge Tashima's question, the Board did say after it, it did not uphold the credibility finding that nothing he has done demonstrates past persecution or nothing he has shown demonstrates past persecution or a well-founded fear of future persecution. So you can look at the facts there and determine that it is a burden of proof case, not a credibility case. All right. Thank you. Yes, thank you. Thank you. I think that the statement that no one knows who these people are is not correct, because Mr. Rondani's statements, which are now credible, everything is credible, and especially that which is supported in the record that there are his friend at various pages was killed and even named the same name, his declaration, all of that. But he testified and Judge Ho in her reiteration of the facts testified these were military people, undercover military people. There's a document that the government even supplied that says that the government in Indonesia hired a student and had him from Triksaki University and had him tell them and spy on people and tell them where they were going to be. They were at the Semanggi Bridge right in front of the parliament. They weren't storming into the door. But what I'd also like to say is I believe this was the case. So what do we make of the fact that he wasn't persecuted for two years after all of this? It wasn't two years, and he was moving around. And even Judge Ho in the his testimony and his declaration say that he was moving around various places at his girlfriend's house and he names three other places and just went to his parents at the end. But I think this matter needs to be remanded because Judge Ho's decision at the end is just factually wrong and leaving out major facts of the physical harm. My time is over. Thank you.
judges: Tashima, Paez, Callahan